IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
------

KAJ FOODS, LLC,

                Plaintiff,                OPINION AND ORDER

v.

                                              16-cv-672-wmc

BERKSHIRE REFRIGERATED
WAREHOUSING, LLC,

                Defendant.

------

Plaintiff KAJ Foods, LLC, alleges that defendant Berkshire Refrigerated Warehousing, LLC, breached the parties' contract, as well as committed related state law torts, by failing to ship food. Before the court is defendant's motion to dismiss for lack of personal jurisdiction or for improper venue under Federal Rules of Civil Procedure 12(b)(2) and (b)(3). In the alternative, defendant seeks to transfer venue to the Northern District of Illinois. For the reasons that follow, the court will deny both motions.

ALLEGATIONS OF FACT[1]

**A. Overview of the Parties**

Plaintiff KAJ is a limited liability company organized under Wisconsin state law, with its principal place of business located in Stone Lake, Wisconsin. KAJ's sole member

------

[1] The following facts are based on both the complaint and the affidavits submitted by the parties in support of and in opposition to the present motion. *See Bolte v. Koscove*, No. 04-cv-935-bbc, 2005 WL 396609, at *1 (W.D. Wis. Feb. 16, 2005) (citing *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) ("[I]n deciding whether a party has made the necessary showing of personal jurisdiction, a court may rely on the allegations of the complaint and also may receive and weigh affidavits submitted by the parties.")).

is a citizen of Wisconsin. KAJ, organized in 2015, purchases and sells distressed, short shelf-life and excess inventories.

Defendant Berkshire is a limited liability company with its principal place of business located in Chicago, Illinois. Plaintiff alleges that BRW's members are all citizens of Illinois.[2]

### B. Breach of Contract Claim

On April 2, 2015, KAJ met with Berkshire to establish an account and to discuss terms and fees between the parties. The parties allegedly agreed that Berkshire would slice and dice KAJ's food products for payment at the rate of $.265 per pound, and it would repack KAJ's product for payment at the rate of $.125 per pound, for a total of $.39 per pound. KAJ also allegedly agreed to pay (1) monthly storage fees within 30 days of receipt of each month's storage invoice and (2) reprocessing fees within 60 days of receipt of a reprocessing fee invoice.

KAJ began shipping food products to Berkshire the same week the parties met, April 2, 2015. In addition to reprocessing and warehousing or storing distressed food items, Berkshire also shipped the products or arranged shipment with a common carrier.

Focusing on Wisconsin customers for the purpose of deciding the present motion, the complaint further alleges several breaches with respect to product to be provided to KAJ's customer Indianhead Foodservice, which is located in Eau Claire, Wisconsin.

---

[2] Assuming the allegations in the complaint prove true, there is complete diversity between the parties. Since plaintiff also alleges at least $75,000 in controversy, the court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).

Specifically, on June 10, 2015, Berkshire allegedly sent the wrong product and wrong bill of lading to Indianhead. On June 15 and 27, 2015, Berkshire allegedly did not have the food products ready to be picked up or loaded for Indianhead. This pattern allegedly continued for Indianhead as follows: on August 3, 2015, Berkshire again shipped the wrong order; on August 18, 2015, Berkshire failed to follow instructions to ship product; on February 19, 2016, Berkshire again shipped the wrong product. With respect to other Wisconsin-based customers, KAJ alleges that Berkshire converted the turkey bacon supplied by KAJ, then sold it for its own profit to Glacier Lake Foods, LLC, located in Rice Lake, Wisconsin. As part of that transaction, Berkshire shipped the turkey bacon to Rice Lake.[3] Finally, there are the impacts on KAJ itself in Wisconsin. For example, KAJ alleges that Berkshire also (allegedly) incorrectly sliced approximately 40,000 pounds of turkey bacon, which resulted in KAJ losing current and future business with the California Department of Corrections.

### C. Berkshire's Other Contacts with Wisconsin

In contrast, Berkshire emphasizes that it neither owns nor leases property in Wisconsin, has no business operations located in Wisconsin and no employees in Wisconsin. At the time that the parties entered into business, KAJ's sole member traveled

---

[3] In opposition to defendant's motion to dismiss for lack of personal jurisdiction, plaintiff also points to September 2016 shipments to a Sun Prairie Cold Storage in Wisconsin, but those allegations do not appear in plaintiff's complaint. Although plaintiff could certainly amend its complaint to include them or simply develop these allegations in the context of the currently alleged breach of contract claim. Regardless, given the allegations in the complaint, involving shipments to Wisconsin companies, the court need not consider additional contacts for purposes of determining whether the court has specific jurisdiction over defendant.

to Illinois to agree on terms, while no one from Berkshire ever travelled to Wisconsin to transact business with KAJ. Similarly, the services that Berkshire performed for KAJ all occurred in Illinois, including the slicing, dicing and storage of KAJ's food products. Defendant contends that it also had no responsibility or involvement in shipping the product for its own handling *to* Illinois.

As detailed above, however, Berkshire was responsible for shipping KAJ product to customers in Eau Claire and Rice Lake, Wisconsin. Berkshire also sent invoices to KAJ's office in Wisconsin. In addition, plaintiff points to the extensive communications between the parties, with Berkshire contacting KAJ in Wisconsin by email, telephone and text.

In addition to specific contacts with Wisconsin relating to the substance of KAJ's contract and tort claims, Berkshire acknowledges shipping products of another customer, Restaurant Depot, to Milwaukee, Wisconsin. Berkshire also accepts occasional shipping jobs from other parties located in Wisconsin.

OPINION

I. Personal Jurisdiction

As a general matter, a federal court may exercise personal jurisdiction over a nonresident defendant "whenever the person would be amenable to suit under the laws of the state in which the federal court sits (typically under a state long-arm statute), subject always to the constitutional due process limitations encapsulated in the familiar 'minimum contacts' test." *KM Enters., Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). Wisconsin's long-arm statute, Wis. Stat. § 801.05, confers jurisdiction to the

maximum extent allowed by the due process clause. *See Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012) ("Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process.").

Here, plaintiff contends that the court has personal jurisdiction over Berkshire under Wis. Stat. § 801.05(1)(d), Wisconsin's provision akin to general jurisdiction, as well as Wis. Stat. §§ 801.05(4), and 801.05(5)(a), (b) and (c), all provisions tracking the requirements for specific jurisdiction. As in virtually every other state, if a plaintiff can establish general jurisdiction over a nonresident defendant, "the defendant may be brought before Wisconsin courts for claims that are unrelated to the defendant's activities in Wisconsin." *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶ 15, 335 Wis. 2d 1, 803 N.W.2d 623. Specific jurisdiction is, of course, is more limited: "the claim for relief for which personal jurisdiction is sought must be substantially connected to or arise out of the defendant's contacts with Wisconsin." *Id.* at ¶ 15. Because specific jurisdiction proves an easier fit here, the court will limit its discussion to this prong.

Among other statutory provisions, plaintiff directs the court to the following subsections of § 801.05(5), which covers "[l]ocal services, goods or contacts":

> (5) . . . In any action which:
>
> (c) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value;
>
> . . .

Wis. Stat. § 801.05(5).[4]

In keeping with this provision, plaintiff alleges, and defendant does not dispute, that Berkshire promised plaintiff or plaintiff's customers -- third parties -- that it would ship product to Wisconsin, and indeed did deliver product within the state. Moreover, plaintiff's contract and tort claims arise in part out of these specific deliveries. These allegations alone are sufficient to satisfy § 801.05(5)(c). *See D'Acquisto v. Triffo*, No. 05C0810, 2008 WL 680204, at *2 (E.D. Wis. Mar. 10, 2008) (finding "claims arise from defendant's promise to deliver to Wisconsin, and to plaintiffs, the shares of stock, and thus section (5)(c) of Wisconsin's long-arm statute confers jurisdiction"); *Afram Exp. Corp. v. Metallurgiki Halyps*, S.A., 772 F.2d 1358, 1362 (7th Cir. 1985), *abrogated on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) (finding promise to ship metal to Milwaukee satisfied section 5(c), despite the fact that defendant "has no office, employees, or assets in Wisconsin and that all the dealings between the parties (apart from Shields' visit of inspection) were conducted by international telephone and telex communications and by face-to-face discussions in New York").

Because the court finds statutory permission to exercise personal jurisdiction, the remaining inquiry is whether Berkshire has sufficient "minimum contacts" with Wisconsin, such that this suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted);

---

[4] The court agrees with defendant that § 801.05(4), concerning local injury; foreign act, is unlikely to apply given that plaintiff's claims appear to sound in contract, not tort. *See Nagel v. Crain Cutter Co.*, 50 Wis. 2d 638, 643, 184 N.W.2d 876, 878 (1971) (holding that § 801.05(4) does not apply to claims sounding in contract); *see also infra* n.6.

*see also Illinois v. Hemi Group, LLC*, 622 F.3d 754, 757 (7th Cir. 2010). More specifically, the court considers whether "the defendant should reasonably anticipate being haled into court in the forum state, because the defendant has purposefully availed itself of the privilege of conducting activities there." *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008). Even more specifically, the Seventh Circuit has identified three essential requirements: "(1) the defendant must have purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (internal citations omitted).

While plaintiff has the burden of establishing the existence of personal jurisdiction, it need only make a *prima facie* showing because defendant's motion to dismiss relies only on written materials and not on an evidentiary hearing. *Purdue Research Found. v. Sanofi-Synthelabo, S.A*, 338 F.3d 773, 782 (7th Cir. 2003). In deciding whether plaintiff has satisfied this standard, therefore, the court resolves "all disputes concerning relevant facts presented in the record" in plaintiff's favor. *Id*. (internal citations omitted). In this case, defendant's arrangements for multiple shipments into Wisconsin in alleged breach of the parties' contract, including failed shipments, is sufficient to satisfy each of the three, essential prongs identified in *Felland* for this court's exercise of specific jurisdiction.

As for the *first* requirement, the Seventh Circuit noted that "the nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *Felland*, 682 F.3d at 674. This case concerns breach of contract and related

7

tort claims. Therefore, the court's focus is on defendant's contacts with Wisconsin arising out of its business relationship with plaintiff. Here, plaintiff alleges that defendant was required to ship products to customers within the state of Wisconsin as part of its contractual relationship, and further alleges that, with respect to one deal, defendant converted plaintiff's product and sold it to a Wisconsin customer. Moreover, plaintiff alleges that defendant was in frequent phone and email contact with KAJ in Wisconsin, both to establish the business relationship and to execute it, as well as to send multiple invoices to KAJ as part of that same arrangement. *See Afram Exp. Corp.*, 772 F.2d at 1364 (7th Cir. 1985) (examining instances where there are other contacts besides delivery in finding purposeful availment requirement satisfied). The court finds defendant's contacts -- arranging for shipment into Wisconsin and frequent contact with KAJ located in Wisconsin -- sufficient to find that defendant "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." *Felland*, 682 F.3d at 673.[5]

*Second*, plaintiff must how that its claims against defendant "arise out of or relate to" those contacts. *Burger King v. Rudzewicz*, 471 U.S. at 472-73 (1985); *uBid v. GoDaddy Grp., Inc.*, 623 F.3d 421, 429 (7th Cir. 2010). This "relatedness" element of specific jurisdiction provides defendants with the predictability that deliberate contacts with a

---

[5] Defendant hints that its use of a common carrier with respect to one of the shipments, rather than its own trucking division, somehow inoculates it from contact with Wisconsin. Defendant fails, however, to cite any caselaw in support of this possible argument. While the use of its own trucks may bolster defendant's connection to Wisconsin, arranging for a common carrier to deliver product in Wisconsin still implicated § 801.05(5)(c), or at least defendant has failed to meaningfully explain why that is not the case. Regardless, there appears to be no dispute that Berkshire's trucks were used to deliver other shipments. (Def.'s Reply (dkt. #17) 9.)

forum in one context will not make them liable to suit in an entirely different context; otherwise, the existence of specific personal jurisdiction would swallow the whole. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). The Seventh Circuit favors a rational approach to this "tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *uBid*, 623 F.3d at 430. When a defendant purposely avails itself of a particular state forum, it submits to that state's jurisdiction for claims arising from or related to those purposeful activities. *Id*. Here, the reciprocal relationship between Berkshire's contacts in Wisconsin and KAJ's claims at minimum make jurisdiction in the state foreseeable, if not likely. In particular, this requirement is met as to plaintiff's claims here, which arise out of the parties' ongoing business relationship.

Defendant argues that "KAJ's causes of action do not arise out of the shipping services themselves. Instead, they claim that the wrong product was shipped or that the shipment never occurred." (Def.'s Reply (dkt. #17) 9.) This argument falls flat. The contract contemplates Berkshire's processing of KAJ's product, possible storing of that product and then shipment to KAJ's customers, including those in Wisconsin where it is based. Berkshire's management of the processing of the product *and* then shipping it to KAJ's customers falls plainly within the contract claim. Moreover, plaintiff's promissory estoppel, fraudulent misrepresentation and negligent misrepresentation claims involve the same conduct underlying plaintiff's breach of contract claim.[6] With respect to plaintiff's

---

[6] Of course, plaintiff's tort claims may be barred by Wisconsin's economic loss doctrine, assuming Wisconsin law governs plaintiff's claims. *See Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205. But that is for another day.

conversion claim in particular, plaintiff alleges Berkshire purposefully shipped KAJ's converted product to one of its customers in Wisconsin.

Finally, defendant contends that plaintiff can only bring claims based on factual allegations implicating defendant's specific contacts with Wisconsin. (Def.'s Reply (dkt. #17) 13.) While there is support for considering whether specific jurisdiction applies on a claim-by-claim basis, defendant fails to provide any support for parsing parts of *a single* claim -- for example, with respect to a breach of contract claim as alleged here, ignoring any allegations not specifically arising out of an act or contact with the forum state. On the contrary, in *uBid*, the Seventh Circuit rejected just such an approach: "Due process does not require us to slice GoDaddy's alleged wrongdoing so finely." 623 F.3d at 432.

The *third and final* requirement for finding specific jurisdiction is satisfied here as well. Plaintiff makes a *prima facie* showing that haling Berkshire into court in this forum "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316; *uBid*, 623 F.3d at 425. This court's inquiry into fairness focuses on: the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in efficiently resolving controversies; and the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477. Moreover, the defendant must present a "compelling case" to show that jurisdiction would be unfair or improper. *Id*. Here, defendant fails to develop *any* argument as to this requirement. Even if this were a close case under the first factor -- the burden on defendant -- all the other factors favor this court's exercise of jurisdiction: Wisconsin clearly has an

interest in insuring proper shipments of perishable food products into the state, especially to its correctional facilities; plaintiff's location and interest in proceeding here certainly favors staying in Wisconsin; so, too, does the likelihood of this court being in the best position to bring this lawsuit to a fair and efficient resolution; and Wisconsin certainly has an interest in insuring that contractual promises made to its citizens are fulfilled. Moreover, the burden on defendant is not substantial. For reasons set forth below, Madison actually seems like a reasonable compromise given plaintiff's location in Northern Wisconsin and defendant's in Northern Illinois. The court, therefore, concludes that its exercise of jurisdiction over defendant does not implicate due process concerns, and defendant's motion to dismiss for lack of personal jurisdiction will be denied.

## II. Transfer

Having found that the court has personal jurisdiction over defendant, its next argument that the court is *required* to transfer the case pursuant to 28 U.S.C. § 1406(a) falls flat. In the alternative, defendants devotes one page of its opening brief to an argument that the case *should* be transferred to the Northern District of Illinois pursuant to § 1404(a). In making this argument, defendant recognizes that the "party requesting a transfer must establish that the proposed transferee forum is clearly more appropriate than the original forum." (Def.'s Br. (dkt. #8) 13 (citing *Coffey v. VanDom, Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).) Defendant's cursory argument falls well short of that mark.

Under 28 U.S.C. § 1404(a), transfer may be granted where the moving party demonstrates that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the (a) convenience of

interest in insuring proper shipments of perishable food products into the state, especially to its correctional facilities; plaintiff's location and interest in proceeding here certainly favors staying in Wisconsin; so, too, does the likelihood of this court being in the best position to bring this lawsuit to a fair and efficient resolution; and Wisconsin certainly has an interest in insuring that contractual promises made to its citizens are fulfilled. Moreover, the burden on defendant is not substantial. For reasons set forth below, Madison actually seems like a reasonable compromise given plaintiff's location in Northern Wisconsin and defendant's in Northern Illinois. The court, therefore, concludes that its exercise of jurisdiction over defendant does not implicate due process concerns, and defendant's motion to dismiss for lack of personal jurisdiction will be denied.

## II. Transfer

Having found that the court has personal jurisdiction over defendant, its next argument that the court is *required* to transfer the case pursuant to 28 U.S.C. § 1406(a) falls flat. In the alternative, defendants devotes one page of its opening brief to an argument that the case *should* be transferred to the Northern District of Illinois pursuant to § 1404(a). In making this argument, defendant recognizes that the "party requesting a transfer must establish that the proposed transferee forum is clearly more appropriate than the original forum." (Def.'s Br. (dkt. #8) 13 (citing *Coffey v. VanDom, Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).) Defendant's cursory argument falls well short of that mark.

Under 28 U.S.C. § 1404(a), transfer may be granted where the moving party demonstrates that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the (a) convenience of

the parties and witnesses; and (b) promote the interests of justice. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir. 1986). Defendant's motion for a discretionary transfer fails under the third prong.

In determining whether a transferee forum is clearly more convenient, the court considers: "(1) the plaintiff's choice of forum; (2) the convenience to parties; and (3) the convenience to witnesses." *Illumina, Inc. v. Affymetrix Inc.*, No. 09-CV-277-BBC, 2009 WL 3062786, at *2 (W.D. Wis. Sept. 21, 2009). As the moving party, defendant carries the burden to establish "that the transferee forum is clearly more convenient." *Coffey*, 796 F. 2d at 219-20. A plaintiff's choice of forum is generally given deference because of its convenience to the plaintiff, especially when it is their home forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). "Unless balance is strongly in Defendant's favor, Plaintiff's choice of forum should rarely be disturbed." *In Re National Presto Indus.,* 347 F.3d 662, 664 (7th Cir. 2003).

Here, the Western District of Wisconsin is KAJ's home forum. (Compl. (dkt. #1) ¶ 1 (noting its principal place of business is Stone Lake, Wisconsin).) Moreover, because of plaintiff's location, at least two of its customer's locations, some of the witnesses and pertinent files are certainly located in Wisconsin. Defendant simply relies on the fact that it is located in Illinois, but this fact does not trump plaintiff's choice to pursue its claims in its home forum. Indeed, if one considers the location of defendant's attorneys in

Minneapolis, Minnesota, it is not ever clear plaintiff's choice is of much burden to defendant.[7]

"The 'interests of justice' is a separate component of a § 1404(a)(3) transfer analysis," which may be determinative and demand a decision contrary to analysis of the convenience factors. *Coffey*, 796 F.2d at 220. Traditionally, this analysis relates to the "efficient administration of the court system," considering such factors as: (1) the district in which the litigants would receive a speedier trial; (2) whether there is related litigation in the transferee district that may allow consolidation; (3) the courts' relative familiarity with the applicable law; and (4) the relation of each community to the controversy at issue. *Id.* at 221; *Illumina*, 2009 WL 3062786 at *5; *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Other than a cursory, unsupported statement that the claims will likely arise under Illinois law and, therefore, an Illinois court would have more familiarity, defendant fails to develop any basis for transferring the case to the Northern District of Illinois. Moreover, this court has regularly applied Illinois law when a contract calls for it. Regardless, all but one of the other factors all weigh in favor of *not* transferring the case and that one is neutral: the litigants likely will receive a speedier trial in this court;[8] there appears to be no other litigation between the parties or other related

---

[7] The court continues to hold trials in its Eau Claire, Wisconsin, courthouse, which both sides' attorneys may find convenient given their locations in the Twin Cities area.

[8] For the 12-month period ending December 31, 2016, the median time to trial for civil cases in the Western District of Wisconsin was 20.3 months, compared to 40.4 months in the Northern District of Illinois. *See* U.S. District Courts - Combined Civil and Criminal federal Court Management Statistics, *available at* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2016.pdf.

litigation; and as described above, Wisconsin has at least an equal interest in the controversy.

Accordingly, the court will also deny defendant's alternative motion to transfer this case.

ORDER

IT IS ORDERED that defendant Berkshire Refrigerated Warehousing, LLC's motion to dismiss for lack of jurisdiction and improper venue (dkt. #7) is DENIED.

Entered this 15th day of June, 2017.

BY THE COURT:


/s/
_____
WILLIAM M. CONLEY
District Judge